2002 UT 63

**GUARDIAN TITLE COMPANY OF UTAH, a corporation, Plaintiff and Appellant,**

v.

**Stacey MITCHELL, formerly known as Stacey Howell; Tebbs & Smith P.C., a corporation; Douglas L. Rex; Stagg & Associates, a corporation, Defendants and Appellees.**

No. 20010283.

Supreme Court of Utah.

July 19, 2002.

Gary A. Weston, D. Scott Crook, Salt Lake City, for plaintiff.

Douglas T. Hall, Michael F. Jones, Salt Lake City, for defendants.

DURRANT, Associate Chief Justice:

¶ 1 This appeal concerns an accounting contract. Guardian Title Company of Utah sued Tebbs & Smith P.C., a professional accounting firm, claiming that Tebbs breached its contract with the title company by not preventing an employee of Tebbs from writing unauthorized checks to herself. The district court granted summary judgment in favor of Tebbs, reasoning that (1) Guardian Title's contract claims were subject to tort analysis, (2) two tort principles barred Guardian Title's claims, and (3) Guardian Title's implied covenant of good faith and fair dealing claim could not be sustained because it would add a new and independent term to the agreed upon contract.

¶ 2 We reverse for three reasons. To begin with, Guardian Title clearly pleaded contract causes of action; no tort analysis is therefore necessary. Second, the tort principles of comparative negligence and agency liability relied on by the district court do not apply to contract actions. Finally, Guardian Title's implied covenant of good faith and fair dealing claim does not depend on the creation of a new and independent contractual term because the term that Tebbs would prevent its employees from writing unauthorized checks already existed in the agreement between the two companies.

## BACKGROUND

¶ 3 In reviewing a grant of summary judgment, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *E.g., Higgins v. Salt Lake County,* 855 P.2d 231, 233 (Utah 1993). We state the facts accordingly.

¶ 4 In the mid–1970's, Guardian Title entered into a contract with Tebbs in which Tebbs agreed to provide the title company with professional accounting services. Under the original terms of this agreement, Tebbs contracted to reconcile Guardian Title's bank account, handle its taxes, and prepare its financial statements.

¶ 5 In approximately 1983, Tebbs agreed to provide additional accounting services to Guardian Title. Specifically, Tebbs expressly and implicitly covenanted to prepare checks payable to Guardian Title's employees, reconcile its payroll account, prepare its payroll tax reports, and withhold its payroll taxes (collectively referred to as the "Payroll Account Services"). Stacey Mitchell,[1] an employee of Tebbs, assumed the primary responsibility of performing these services on behalf of the accounting firm in or around 1995.

¶ 6 In 1996, Guardian Title's president and sole owner, Douglas W. Curlis, moved to southern Utah. He nevertheless continued to manage Guardian Title's Salt Lake City office. In order to facilitate payment to Guardian Title's employees, Curlis provided pre-signed blank payroll checks to Tebbs. Tebbs would then fill in the employees' names and salaries pursuant to a list that it had received from Guardian Title, and return the payroll checks to the title company to distribute to its employees. Later, Guardian Title authorized Curlis's secretary to use a signature stamp to sign the payroll checks.

¶ 7 In October 1997, Guardian Title terminated its relationship with Tebbs and employed a different accounting firm to administer its payroll. It switched accounting firms again in or around December 1997.

---

1. Stacey Mitchell previously went by the name Stacey Howell.

Thereafter, it discovered that during the period Mitchell handled the Payroll Account Services on behalf of Tebbs, she had written thirty-five unauthorized checks to herself.

¶ 8 On April 14, 1999, Guardian Title filed a complaint against Tebbs for breach of contract,[2] alleging that Tebbs had "expressly and implicitly covenanted" to provide the Payroll Account Services and that it had failed to perform those services. Tebbs then moved for summary judgment on September 27, 2000, asserting that it did not breach either an express or implied agreement with Guardian Title and that Guardian Title's action was in reality a tort claim barred by agency and comparative negligence principles.

¶ 9 At a hearing conducted on October 25, 2000, the district court granted Tebbs's summary judgment motion for four reasons. First, it concluded that although Guardian Title filed a contract action against Tebbs for breaching its duty to deal honestly with funds entrusted by a client, according to the court of appeals' opinion in *Kilpatrick v. Wiley, Rein, & Fielding,* 909 P.2d 1283 (Utah Ct.App.1996), the analysis for whether such a duty had been violated was identical to a negligence cause of action. Second, it held that the tort principle that an employer is not liable for the illegal acts of an employee applies to contract actions. Third, it reasoned that Guardian Title's implied covenant of good faith and fair dealing claim could not be sustained because it would add a new and independent term to Guardian Title's contract with Tebbs. Finally, it relied on the "other reasons" advanced by the accounting firm (i.e., the argument that Guardian Title's own negligence precluded its recovery).

¶ 10 Following this hearing, the district court entered a final order granting summary judgment to Tebbs on November 15, 2000. Guardian Title appeals. We have jurisdiction pursuant to section 78–2–2(3)(j) of the Utah Code.

¶ 11 On appeal, Guardian Title contends that the district court erred in three respects. Specifically, it argues that the district court incorrectly concluded that (1) its

contract action against Tebbs was subject to tort analysis under *Kilpatrick,* (2) tort doctrines regarding comparative negligence and respondeat superior apply to contract actions, and (3) its implied covenant of good faith and fair dealing claim could not be sustained because a new and independent term would be added into the agreed upon contract.

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 12 In examining the district court's grant of summary judgment, we review its legal conclusions for correctness. *E.g., Tustian v. Schriever,* 2001 UT 84, ¶ 13, 34 P.3d 755. Summary judgment is appropriate only if the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c).

### II. GUARDIAN TITLE'S CLAIMS SOUND IN CONTRACT AND ARE NOT SUBJECT TO TORT ANALYSIS

¶ 13 Relying on *Kilpatrick,* Tebbs argues that the district court correctly concluded that Guardian Title's contract-based action should be treated as a tort claim and that there were no contractual provisions on which Guardian Title could prevail. We disagree.

¶ 14 In a relationship with a professional, there may be several sources of liability on which a client can bring a claim: (1) duties imposed by operation of law, (2) contractual obligations, or (3) coextensive tort and contract duties. *See Salt Lake County v. W. Dairymen Coop.,* 2002 UT 39, ¶ 18, 48 P.3d 910 (holding that "there is no blanket prohibition against creating a contractual duty that parallels a common law obligation"); *Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 800 n. 3 (Utah 1985) (recognizing "that in some cases the acts constituting a breach of contract may also result in breach-

---

**2.** We note that Guardian Title also sued Mitchell and the two other accounting firms. Those actions are not relevant to this appeal, however. We therefore do not discuss them in detail.

es of duty that are independent of the contract and may give rise to causes of action in tort"); *see also Kilpatrick,* 909 P.2d at 1289 (declaring that "[c]lients wronged by their lawyers may sue for damages based on breach of contract, breach of fiduciary duty, or negligence"). Where a plaintiff seeks to enforce an obligation arising exclusively in tort, it must file a tort action; likewise, obligations that sound exclusively in contract must be pursued as contract claims. With respect to duties that arise both in tort and contract, however, a plaintiff may elect to bring a tort action, a contract action, or both.[3]

■ ¶ 15 Here, Guardian Title filed a breach of contract action, contending that Tebbs breached explicit contractual terms and an implied covenant of good faith and fair dealing. Specifically, in its complaint, Guardian Title alleged that it entered into an oral agreement with Tebbs in which the accounting firm expressly and implicitly covenanted to prepare its payroll checks, reconcile its payroll accounts, and prepare its tax reports. It further alleged that Tebbs failed to perform those services.[4]

¶ 16 While Guardian Title clearly pleaded contractual causes of action, the district court reasoned that its claims were in reality tort actions because they all involved the tort-like duty to "deal honestly with funds entrusted

by the client." In reaching this conclusion, however, the district court misconstrued the nature of Guardian Title's claims. Contrary to the district court's interpretation, Guardian Title does not allege that Tebbs violated a tort-like duty of honesty and fidelity. Instead, Guardian Title asserts that Tebbs breached its express contractual duty to perform the Payroll Accounting Services and an implied contractual duty of good faith and fair dealing to pay only Guardian Title's employees.[5] Accordingly, this is purely a contract action, and no tort analysis is required.[6]

## III. THE TORT DEFENSES RELIED ON BY TEBBS ARE NOT AVAILABLE IN CONTRACT ACTIONS

■ ¶ 17 Given that Guardian Title filed only contractual claims, we next examine whether the district court correctly held that the tort doctrines (1) that a plaintiff may not recover if its negligence exceeds that of the defendant and (2) that an employer is not responsible for the illegal acts of an employee in respondeat superior apply to contract actions. Tebbs contends that regardless of whether an action is pleaded in contract or tort, the district court's ruling should be affirmed because Guardian Title's negligence exceeded its negligence and the criminal act of one of its employees (i.e., Mitchell) should not impose liability on it. We disagree.

3. Of course, if the plaintiff elects to bring both a contract action and a tort claim regarding the same duty, dual recovery is prohibited.

4. Tebbs asserts that Guardian Title did not adequately set forth in its complaint a cause of action for breach of an implied covenant of good faith and fair dealing. "[U]nder Utah's liberal notice pleading requirements, [however,] all that is required is that the pleadings be sufficient to give fair notice of the nature and basis of the claim asserted and a general indication of the type of litigation involved." *Fishbaugh v. Utah Power & Light,* 969 P.2d 403, 406 (Utah 1998) (citation and internal quotations omitted). Guardian Title satisfied this burden by asserting in its complaint that Tebbs (1) "expressly and implicitly covenanted" that it would perform the Payroll Account Services, (2) agreed to perform those services "honestly," and (3) breached its agreement. Accordingly, Guardian Title adequately pleaded a cause of action for the breach of an implied covenant of good faith and fair dealing.

5. We note that Guardian Title could have filed a tort action alleging that Tebbs violated its duty of honesty and fidelity. Guardian Title elected not to file such an action, however, and pursued only contractual claims. As a result, Tebbs lost the right to certain defenses that are available in tort. However, Guardian Title also forfeited some arguments (e.g., its potential to recover punitive damages). Moreover, Tebbs acquired the right to argue that Guardian Title's suit is precluded by contract defenses that are not applicable to tort actions.

6. This decision is not inconsistent with the court of appeals' ruling in *Kilpatrick* for two reasons. First, *Kilpatrick* declares that "actions based on breach of contract are conceptually distinct" from tort actions. 909 P.2d at 1290. Second, the portion of *Kilpatrick* noting that "the same standard of causation applies whether the alleged wrong is a negligent act, fiduciary breach, or even a contractual breach," *id.* at 1291, is dictum because that case did not involve any contract claims.

¶ 18 A contract is an agreement between two parties that imposes obligations on each. Black's Law Dictionary 318 (7th ed.1999). Where one party fails to satisfy the obligations it has undertaken, it has breached the contract, and it cannot defend itself by claiming either (1) that the other party's negligence exceeded its own or (2) that an illegal act of its employee prevented it from fulfilling its obligations. Indeed, if a landscaping company contracts to mow an individual's lawn and then fails to perform on that contract, the company cannot defend itself on the ground that the individual was more at fault or that one of its employees stole its lawnmower; the pertinent questions are whether the individual's lawn has in fact been mowed and if that individual performed its duties under the contract. Accordingly, the tort defenses relied on by Tebbs and the district court have no application to the present situation. The district court erred in concluding otherwise.[7]

## IV. GUARDIAN TITLE'S IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM

¶ 19 Having determined that Guardian Title's contractual causes of action should not be treated as tort claims and that none of the tort defenses asserted by Tebbs apply to contract actions, we next consider whether the district court correctly rejected Guardian Title's breach of an implied covenant of good faith and fair dealing claim on the ground that no term in the contract at issue declared that Tebbs would refrain from paying individuals outside of Guardian Title's payroll. Tebbs argues that we should affirm the district court's conclusion because *Brehany v. Nordstrom,* 812 P.2d 49, 55 (Utah 1991), states that the covenant of good faith and fair dealing "cannot be construed ... to establish new, independent rights or duties not agreed upon by the parties." The case at hand would not require such a construction, however.

¶ 20 Tebbs explicitly covenanted to prepare checks payable to Guardian Title's employees and reconcile its payroll account. Contrary to the narrow meaning the district court apparently gave to these contractual terms, we conclude that the good faith performance of both of these obligations requires that Tebbs refrain from paying individuals other than Guardian Title's employees. Indeed, by agreeing to such terms, Tebbs effectively agreed to ensure that no unauthorized payroll payments were made. It did so because the word "reconcile" means to "check a financial account against another for accuracy," Webster's Collegiate Dictionary 977 (10th ed.1998) (internal parentheses omitted), and the obligation to prepare checks payable to Guardian Title's employees implies that no checks will be written to individuals not included in that category. Accordingly, the notion that Tebbs would prevent Mitchell from writing unauthorized checks was an express term in the contract Tebbs had with Guardian Title. The district court therefore erred in holding that Guardian Title's implied covenant of good faith and fair dealing claim depended on the creation of a new contractual term.

## CONCLUSION

¶ 21 In summary, we hold that (1) Guardian Title's claims sounded exclusively in contract, (2) the tort principles of comparative negligence and respondeat superior have no application to Guardian Title's contract claims, and (3) Guardian Title's implied covenant of good faith and fair dealing claim did not depend on the creation of a new contractual term because such a term already existed in the contract. We therefore reverse the district court's decision and remand for further proceedings consistent with this opinion.

¶ 22 Chief Justice DURHAM, Justice HOWE, Justice RUSSON, and Justice WILKINS concur in Associate Chief Justice DURRANT's opinion.

---

7. Although the negligence purportedly committed by Guardian Title does not bar its suit entirely, we note that such conduct may be relevant in determining whether Guardian Title properly mitigated its damages.